Case number 5 is Ohio Specialty Insurance v. Best Inn Midwest. Case number 5 is Ohio Specialty Insurance v. Best Inn Midwest, LLC. Mr. Lewarchik. Good morning, Your Honor. May it please the court, esteemed counsel. My name is David Lewarchik. For the record, I represent Best Inn on appeal. We are requesting that the summary judgment motion entered in this matter be reversed as well as the order granting sanctions for reasons stated in our briefs. However, for purposes of oral argument, we're only going to be focusing on one issue, and that is whether the district court abused its discretion. Mr. Lewarchik, we'd appreciate it if you raise your voice. This is a very big room, and that microphone is designed to record rather than to amplify. Thank you, Your Honor. As I was saying, we're asking that the summary judgment motion be reversed in the order granting motions be reversed as well because for reasons listed in the briefing, but we're going to focus an oral argument on one issue, and that is whether or not the district court abused its discretion in granting the sanction it did. At issue in this case is an insurance coverage provision for that is, well, really the term is vacancy, and what occurred is that my client's industrial air conditioning units on top of the roof were vandalized. Their innards were taken out, and copper was stolen. Best Inn submitted a claim for this, which was denied by Ohio Security, and eventually Ohio Security filed a deck action. During the course of that discovery, they requested occupancy records, including guest receipts, tax records, and earning and loss statements. Those were not provided by Best Inn until close to the time that the magistrate judge in this matter entered a report and recommendation that recommended the sanction of finding vacant the premises at issue, which is an exclusion that would preclude Best Inn from having coverage. The district court found, as a matter of fact, that they were not provided as part of a deliberate litigation strategy by your client. I realize you weren't representing Best Inn at the time, but if you choose to defy a federal court as part of a deliberate litigation strategy, I don't see how you can expect to avoid sanctions. I would agree with you, Your Honor. I don't think the question necessarily is whether sanctions should be imposed or what kind of sanctions, and it's well known, of course, that when you hire a lawyer, the sins of the lawyer can be passed down to the client. However, in this circuit, you require acquiescence to such conduct, dilatory conduct by the client. And the client did acquiesce. The lawyer advised the client not to provide the records, and the client chose to accept that advice. Now, that was preposterous advice from the lawyer and a stupid decision by the client, but there you are. That's how we got here. I would argue that just because he was counseled to delay doesn't mean that he acquiesced to it. But he behaved exactly the way his lawyer told him he should behave. Well, there you are. As I say, it's just the facts. I think there's a question of fact, however, as to whether or not he agreed to the tact that his attorney took. Look, it sounds like you're blaming Best In's prior counsel for the discovery violations, but you yourself said it. Clients are responsible for the actions of their lawyers. You aren't asking us to overlook very serious legal and ethical breaches because Mr. Reddy hired someone to commit them rather than to do it himself, are you? Of course not. Well, no. I think there's a question of fact regarding whether he had knowledge of what was going on or whether he acquiesced. But the court pointed to, to support its position that Mr. Reddy acquiesced and not just knew about what was going on, that were sent to him by Ohio Security's counsel, as well as emails sent to Mr. Kennedy, who was Best In's counsel at the time, and then finally Mr. Reddy's presence at various conferences. But there's no evidence that Mr. Reddy ever responded to any of these emails. But we know that he did exactly what his lawyer recommended, which is sit on the documents and defy the court. That's what he did. There's no way of getting around that. Well, okay. Following the advice of counsel, I would say. He is very lucky that he is a free man. The lawyer is very lucky he still has a license to practice law. Right. Well, that brings up one of the problems regarding the sanction, is that Mr. Kennedy bore no responsibility in the sanction. It was only Best In and Mr. Reddy. Even though, arguably, Mr. Kennedy, the attorney, played the primary or almost exclusive role in the dilatory tactics, the record is rife with emails and texts where he counsels as much. So the law says in this circuit that there should be a balancing of the attorney's conduct versus the client's conduct. In addition, the question becomes whether or not the sanction was appropriate, given the discovery that was not produced. The magistrate judge says on at least five occasions in his memorandum and recommendation that the discovery that was not produced was occupancy discovery, not customary use discovery. In fact, Ohio Security, in its motion responding to Mr. Reddy's pro se motion, states that as well, they classify it as occupancy discovery. So the question here is not whether there was wrongdoing, it's what the appropriate sanction is in this circumstance. Well, look, imposing a monetary fee wouldn't have helped Ohio Security at all here. The documents were gone because of negligent or nefarious behavior. And I would have left Ohio Security without any way at all to prove that the hotel met the definition of vacant for the entirety of the term of the insurance. Right. That is what the district court concluded, that the prejudice was not fair. I would disagree because Ohio Security had multiple agents tour the property, take pictures, take videos, write reports. That's how they came to the conclusion to ultimately deny coverage, is based on one of their experts' report that toured the premises. That report was the Helsinki report, an engineer. So they had three or four different agents that toured the premises. And as you can see from building A, it's not terribly complicated, but all of these rooms are there for purposes of servicing the rest of the hotel. It's not there for purposes of revenue generation, which is the documents that were requested by Ohio Security and were not provided. Wasn't the insurance for the whole hotel? Why would it matter if building A had no guest rooms? I'm sorry, Your Honor, I didn't catch the first part. I'm sorry. It's okay. I thought the insurance was for the entire hotel, so it wouldn't matter if building A had no guest rooms. It wouldn't matter. Actually, it was broken up into four different parts, and that's what the Helsinki report that was prepared by Ohio Security also mentions. There's an insurance policy for each building. There's building A, building C, building D, building E. And so the ultimate issue was whether more than 31% of building A was being used for customary business usage. I'd like to reserve the last 20 seconds I have for rebuttal, if that's appropriate. Thank you. Ms. Rowe. Thank you, Your Honor. May it please the court. You out right away with the last question. Because, yeah, the whole of Beskin was insured. So why does it matter if building A on its own was more than 31% occupied? Would it have been a better argument to say that Ohio Security needed occupancy records from the whole hotel because the entire structure was the subject of the insurance coverage? Am I missing something here? I believe, Your Honor, the clause itself talks about each building. And the hotel is separated in different buildings. So that's the reason the focus has been on building A and whether it was used for the customary use. We, however, believe that the records that were requested, whether they're occupancy or not, a lot of them were income-type records that would have shown, or at least we could have reflected the conference room and meeting halls, whether they were being used in customary use. Now, at the time of this appeal, they've now admitted that they were not being used. They were being used to store items. They were being used to store toilets and A.C. units. And it is Ohio Security's position that is not a customary use of those buildings. But that was, again, we're dealing with a sanction order. And that was what those discovery was trying to get at is what, you know, let me see some of the stuff. Because there was a concern. Ohio, this is not your run-of-the-mill hotel. It's a hotel that had been shut down and had multiple, multiple fires. There were 14 claims in total, even though this appeal is only dealing with one claim. And that is the reason the special investigation unit was already involved in these types of claims. And so Ohio Security already had the vacancy. They were already concerned about is this hotel vacant? Is that what's going on here? And that's why they were requesting all those records. And as this court's already intimated, I mean, you know, in this case, just to go through some of the discovery abuses, because it's more than just a discovery abuse. It's more than just a violation of order. They waited a year to allow Ohio Security to even get in there. And by that time, according to what the district court had noted and what the evidence had shown, by that time, the evidence were already, they were gone in large part, all the evidence. So we would be, Ohio Security would be in a position where they have to prove vacancy without any evidence. I can't conceive of any more prejudice than that to Ohio Security. We also have, you know, they've argued, Best Ends argued that the district court did not consider lesser sanctions. But this court noted the court did consider lesser sanctions. It said monetary. It didn't think it would do it because the discovery abuse was so flagrant, and it was a strategy. It was a strategy to use. You know, we're just going to not give them the information that they are entitled to. The court did not think exfoliation instruction, assuming the case would go to trial. The court did not believe that that would be, that would deter this because of the egregiousness, which the court actually said was bad faith on Best Ends' part in terms of the discovery. You know, the court considered the dilatory tactics, the ignoring of two court orders, the waiting a full year, like I said, to grant access to the property, and the differing stories that Mr. Reddy told in terms of whether the records were destroyed by thieving employees or whether it was destroyed by a fire. And they don't dispute that. They actually say that the district court's position that there were two stories told is plausible. Well, if it's plausible, it's certainly non-abusive discretion, and that's the standard before this court when it comes to the sanction order. So we would ask that this court affirm the sanction order. We believe that it was in the court's broad discretion, and there's been nothing to show that it was an abusive discretion. Turning to bad faith, we would ask this court to affirm the summary judgment on bad faith. For the purposes of what's been said in our brief, there was a rational or principled basis to deny the claim. And the court basically said, look, at best, taking all your evidence as true, at best it would show negligence on Ohio Security's part. It does not show anything that rises to the level of the wrongful mental state that had to be in there. And negligence just will not support a bad faith claim. And then the court also talked about the illusory coverage notion and said there's no illusory coverage here. Had this not been a vacant building, it would have been covered. If there's no further question, that's all I had. Thank you, counsel. Thank you. Mr. Lomarczyk, you have 15 seconds. Just quickly, there was no prejudice because they had four different agents go to the property, search it, photograph it, video it. And then finally, in closing, it's more than just... Thank you, Mr. Lomarczyk. Okay. Thank you, Your Honor. The case is taken under advisement.